IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SCF, LLC,

      Plaintiff,

   v.                                    No. 1:20-cv-01173-JDB-jay

HARTFORD FIRE INSURANCE
COMPANY,

      Defendant.

_____

ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER
AND DENYING DEFENDANT'S SECOND MOTION TO DISMISS WITHOUT PREJUDICE

_____

This matter is before the Court upon Plaintiff's appeal from and objection to United States Magistrate Judge Jon A. York's order granting Defendant's motion to bifurcate and stay and denying the pending discovery motions without prejudice. (Docket Entry ("D.E.") 75.)

For the reasons that follow, Judge York's order is **AFFIRMED.**

## I.    Background and Procedural History

This diversity action arises out of an insurance dispute between SCF, LLC, ("SCF") the insured, and Hartford Fire Insurance Company ("Hartford"), the insurer, over coverage concerning a claim by SCF for storm damage to the insured's commercial buildings. (D.E. 1.) On June 19, 2020, Plaintiff submitted its sworn proof of loss and estimates for the repairs and replacements it claimed it suffered. (D.E. 23 at PageID 281.) SCF's statement of loss amounted to $25,803,878.07. (D.E. 23 at PageID 281.) Hartford rejected the proof of loss within twenty-four hours, asserting that its investigation of the claim was still ongoing. (D.E. 12-1 at PageID 237.)  Defendant's rejection letter also noted that Plaintiff had submitted additional photographs and information just two days earlier. (D.E. 12-1 at PageID 237.) On August 3 and August 5, 2020, SCF sent more

1

documentation in support of its claim. (D.E. 36 at PageID 377; D.E. 36-5 at PageID 646.) According to Hartford, the documents it eventually received totaled 1,262 pages. (D.E. 36 at PageID 377.)

In its original complaint filed on August 10, 2020, Plaintiff sued for breach of contract, seeking compensatory damages in the amount of $40,000,000 and for an award of punitive damages of $80,000,000. (D.E. 1 at PageID 5-8.) In its amended complaint filed on October 6, 2020, SCF averred that Hartford breached the insurance contract by failing to pay the full $25,803,878.07 it demanded. (D.E. 23 at PageID 281, 283.) Plaintiff further alleged that Defendant intentionally delayed its investigation and that its refusal to pay amounted to bad faith. (D.E. 23 at PageID 284, 289-290.) The insurer contended that its investigation was stalled due to SCF's repeated delays in providing the information it had requested as well as the impact of the COVID-19 pandemic. (D.E. 36 at PageID 375-76.)

On December 18, 2020, Defendant moved to bifurcate the claims and stay Plaintiff's bad-faith and punitive-damage assertions under Federal Rule of Civil Procedure 42(b). (D.E. 35.) On February 22, 2021, Defendant filed a motion for a protective order, (D.E. 49), and a motion to compel, (D.E. 52). On the same day, Plaintiff also filed a motion to compel. (D.E. 51.) On March 11, 2021, Plaintiff sought a protective order. (D.E. 61.) Then, on April 19, 2021, Plaintiff moved to compel. (D.E. 71.) In four orders of reference, (D.E. 37, 55, 63, and 72), the Court referred these six motions (D.E. 35, 49, 51, 52, 61, and 71) to the magistrate judge for determination.

On May 5, 2021, Magistrate Judge York granted Defendant's motion to bifurcate SCF's claim for breach of contract from those for bad faith and punitive damages. (D.E. 74.) Judge York concluded that Rule 42(b) governed whether bifurcation was appropriate in this case. (D.E. 74 at PageID 2382.) Relying on the criteria enumerated in Rule 42(b), he concluded that judicial

economy weighed in favor of bifurcation, thereby avoiding prejudice and eliminating juror confusion. (D.E. 74 at PageID 2382-83.) He also found that bifurcation would streamline the litigation and further the convenience of the parties. (D.E. 74 at PageID 2384.) Because there was minimal overlap in discovery related to the bifurcated claims, the magistrate judge stayed discovery on SCF's bad-faith and punitive-damages claims. (D.E. 74 at PageID 2384-85.) As the other pending motions referred to the magistrate judge related to discovery on these claims, he denied them without prejudice. (D.E. 74 at PageID 2385.)

Plaintiff timely appealed with objections to Judge York's order, (D.E. 75), and Defendant responded. (D.E. 76.)

## II.      Standard of Review

The standard of review for a party's objections to a magistrate judge's ruling on a nondispositive matter is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Curran v. Wepfer Marine, Inc.*, No. 1:20-CV-1229-STA-JAY, 2021 WL 1566081, at *1 (W.D. Tenn. Apr. 21, 2021).

The clearly erroneous standard applies to factual findings made by a magistrate judge, while legal conclusions are reviewed under a contrary to law measure. *Atwood v. Graham Lumber Co., LLC*, No. 14-1032, 2015 WL 430119, at *1 (W.D. Tenn. Feb. 2, 2015) (quoting *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.,* 621 F.Supp.2d 603, 605 (W.D. Tenn. 2009)). A finding of fact is "clearly erroneous" when although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Whelan*, 396 F. App'x 197, 200 (6th Cir. 2010) (quoting *United States v. McGee,* 494 F.3d 551, 554 (6th Cir. 2007)). Where there are two plausible views, a District Court may not overturn the magistrate judge's order under the "clearly erroneous" standard solely because it would have decided differently. *See Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1026

(E.D. Mich. 2011) (citing *Anderson v. City of Bessemer City, N. Car.*, 470 U.S. 564, 573 (1985)). "A legal conclusion is contrary to law if it contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Ellison v. Clarksville Montgomery Cty. Sch. Sys.*, No. 3:17-CV-00729, 2018 WL 998337, at *1 (M.D. Tenn. Feb. 21, 2018) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus*, Federal Practice & Procedure* § 3069 (2d ed. 1997).

For mixed questions of law and fact, courts utilize "a sliding scale of review" in which "clear error" and "contrary to law" represent the outer bounds. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 221 (6th Cir. 2019). "The more fact-intensive the question, the more deferential the level of review. The more law intensive the question, the less deferential the review." *Id.*

Finally, the Court need not review, under a de novo or any other standard, those aspects of the order to which no specific objection is made. *Canaday v. Anthem Companies, Inc.*, 439 F. Supp. 3d 1042, 1045 (W.D. Tenn. 2020), *aff'd*, No. 20-5947, 2021 WL 3629916 (6th Cir. Aug. 17, 2021) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Rather the Court may simply adopt those findings and rulings. *Id.* Therefore, because neither party objected to Judge York's denial of the pending discovery motions, (D.E. 49; D.E. 51; D.E. 52; D.E. 61; D.E. 71), that ruling is **AFFIRMED**.

### III.    Analysis

Plaintiff lodged several objections to Judge York's order. The Court will address those exceptions in turn.

a.   Tennessee Law

SCF first contends that Judge York's order ignores that punitive damages are a substantive state law issue. (D.E. 75 at PageID 2393.) According to Plaintiff, his opinion severing the breach of contract claim from those for bad faith and punitive damages runs contrary to the substantive law of Tennessee. (D.E. 75 at PageID 2400.) SCF insists that the Tennessee Supreme Court's decision in *Hodges v. S.C. Toof & Co.*, 833 S.W. 2d 896 (Tenn. 1992), as well as TENN. CODE ANN. § 29-39-104(a) require that this case be divided into two phases. (D.E. 75 at PageID 2390-92.) During the first phase, the jury would determine: "(1) liability for, and the amount of, compensatory damages; (2) liability for, and the amount of, statutory bad faith damages; and (3) liability for punitive damages." (D.E. 75 at PageID 2392.) If the jury concludes that Defendant is liable for punitive damages, the second phase, before the same jury, would involve a determination as to the amount of such damages. (D.E. 75 at PageID 2392.) In support of its argument, Plaintiff avers that this Court should follow rulings by Tennessee district courts which have bifurcated cases in this manner. (D.E. 75 at PageID 2395-98, 2400) (citing *Northend Inv'rs, LLC v. S. Tr. Ins. Co.*, 256 F. Supp. 3d 781, 788-89 (W.D. Tenn. 2017) (bifurcating a breach of contract, bad faith, and punitive damages case pursuant to the holding in *Hodges*); *VJ, LLC v. State Auto Prop. & Cas. Ins. Co.*, No. 14-2919, 2016 U.S. Dist. LEXIS 187739, at *40-42 (W.D. Tenn. Aug. 3, 2016) (same); *Werner v. Bell Family Med. Ctr.*, No. 3:09 C 0701, 2012 U.S. Dist. LEXIS 64581, at *10-13 (M.D. Tenn. May 1, 2012) (same); *Bowman v. Bulkmatic Transp. Co.*, No. 3:08-CV-37, 2010 U.S. Dist. LEXIS 3575, at *1-3 (E.D. Tenn. Jan. 15, 2010) (same); *Harris v. Ford Motor Co.*, No. 3:04-0144, 2006 U.S. Dist. LEXIS 97175, at *6-7 (M.D. Tenn. July 11, 2006) (bifurcating trial as to amount of punitive damages by excluding references to punitive damages and evidence of the defendant's financial condition until a prima facie case for punitive damages was established); *Rotello v. Clayton*

*Homes of Del., Inc.*, No. 303CV-573, 2006 U.S. Dist. LEXIS 21586, 2006 WL 842931, at *1-4 (E.D. Tenn. Mar. 28, 2006) (bifurcating a breach of contract, bad faith, and punitive damages case pursuant to the holding in *Hodges*)). In his contrary determination, argues SCF, the magistrate judge ignores those precedents. (D.E. 75 at PageID 2395-98, 2400.)

As explained in the magistrate judge's order, however, it is well-settled that bifurcation is a matter of federal procedural law and a court may choose to bifurcate or not as it deems appropriate without regard to what a state court would do in the same situation. *See Banks by Banks v. S. Ry. Co.*, 922 F.2d 841, 841 (6th Cir. 1991) (finding that it was not error for the district court to sever because "[u]nder Fed. R. Civ. P. 42(b), the trial court has the authority and discretion to order the separation of issues for separate trials"); *Cravens v. Cty. of Wood, Ohio*, 856 F.2d 753, 755 (6th Cir. 1988) (citing *Moss v. Associated Transport*, 344 F.2d 23 (6th Cir. 1965)) ("It is well settled that a trial judge may, within his sound discretion, sever the issue of liability from the issue of damages."); *Northend Inv'rs, LLC*, 256 F. Supp. 3d at 788 (quoting *Riddle v. Royal Indem. Co.*, No. 3:05CV-540-S, 2007 WL 542389, at *1 (W.D. Ky. Feb. 16, 2007)) ("Although a federal court sitting in diversity applies the law of the forum state . . . the conduct of discovery and bifurcation are matters of federal procedural law."); *Valley Ford Truck, Inc. v. Phoenix Ins. Co.*, 2011 WL 841177, at *1 (N.D. Ohio Mar. 7, 2011) (citing *Moss v. Associated Trans., Inc.*, 344 F.2d 23, 25 (6th Cir. 1965)) ("In determining whether to bifurcate a suit and order separate trials, state law is not controlling, even in diversity suits, because Federal Rule of Procedure 42(b) is a valid regulation of procedure."). Moreover, the decision to bifurcate is left wholly to the trial court's discretion and depends on the facts and circumstances of each case. *Saxion v. Titan-C Manufacturing*, 86 F.3d 553, 556 (6th Cir. 1996).

Plaintiff's argument that Judge York's recommendation is incorrect because this Court and other district courts have chosen to bifurcate lawsuits in the manner Plaintiff suggests overlooks the discretion afforded to courts based on the factors each case presents.  The Sixth Circuit has determined that the decision to grant or deny bifurcation is well within the discretion of the trial judge. *Saxion*, 86 F.3d at 556; *Tharpe v. Illinois Nat'l Ins. Co.,* 199 F.R.D. 213, 215 (W.D. Ky. 2001) (finding that there is "almost unanimity in determining that the issue is a discretionary matter for trial courts."); *see also Griffith v. Allstate Ins. Co*., 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014) ("The court has wide latitude in deciding whether to sever and stay proceedings by weighing the competing interest of the parties and attempting to maintain a fair balance.").

Additionally, the circumstances faced in three of the cases relied on by Plaintiff differentiates them from the lawsuit presently before the Court.  *See Northend Inv'rs, LLC*, 256 F. Supp. at 788; *VJ, LLC*, No. 14-2919, 2016 U.S. Dist. LEXIS 187739, at *41 (W.D. Tenn. Aug. 3, 2016); *Bowman*, 2010 U.S. Dist. LEXIS 3575, at *2-3. For example, in *Northend Investors*, which involved a dispute over insurance coverage for fire damage to a commercial building, the plaintiff insured alleged breach of contract and bad faith and requested compensatory and punitive damages. *Northend Invs., LLC*, 256 F. Supp. 3d at 783-84. The defendant filed an unopposed motion to bifurcate the trial that specifically requested that the Court separate the proceedings in accordance with *Hodges*. *Id*. at 788-89. Similarly, in *VJ, LLC,* No. 14-2919, 2016 U.S. Dist. LEXIS 187739, at *41 (W.D. Tenn. Aug. 3, 2016), the defendant's request to bifurcate was unopposed, as was the situation in *Bowman*, 2010 U.S. Dist. LEXIS 3575, at *2-3. Here, Defendant's motion for bifurcation did not request bifurcation consistent

with *Hodges*, and Plaintiff opposed that motion. (*See* D.E. 35 and 38.) Moreover, Defendant opposes Plaintiff's request to bifurcate in conformity with *Hodges*. (D.E. 45.)

Next, Plaintiff avers that Judge York's order is flawed as it "erroneously relies on cases interpreting the laws of other States and on Tennessee opinions that predate [the Tennessee Civil Justice Act of 2011 ("the Act")] while disregarding relevant, applicable, and instructive decisions applying substantive Tennessee law." (D.E. 75 at PageID 2398.)

As noted previously, Tennessee law does not govern bifurcation in this case. Therefore, Judge York's reliance on federal cases from other states is not in error.[1] Similarly, Judge York's reliance on court opinions that predate the Act is proper as it does not control bifurcation in this litigation.

     b.     Rule 42(b) Criteria

Rule 42(b) provides, in pertinent part, that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "Only one of these criteria need be met to justify bifurcation." *Saxion*, 86 F.3d 553, 556 (6th Cir. 1996) (citing *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1177 (7th Cir.)). The Court considers several factors in conducting this inquiry, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). Additionally, bifurcation may be appropriate when litigation of one issue may

---

[1] Although rulings from other districts in the same circuit are not binding precedent, a Court can find one to be persuasive. *Smith v. Astrue*, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009); *see also Abbott v. Berryhill*, No. 1:18-CV-01082-DKV, 2019 WL 11583409, at *1 (W.D. Tenn. May 23, 2019) (finding decisions from other district courts in the Sixth Circuit to be persuasive).

eliminate the need for litigation of other issues. *Int'l Bhd. of Elec. Workers v. Am. Laundry Mach., Inc.*, No. 1:07–cv–324, 2010 WL 200396, at *1 (S.D. Ohio Jan. 13, 2010).

As for the Rule 42(b) criteria, Plaintiff initially maintains that Judge York's order would not be "convenien[t], expedien[t], or econom[ical]" because it would force the parties and the Court to conduct two multi-week trials that are essentially the "same case." (D.E. 75 at PageID 2401.)

Contrary to Plaintiff's assertion,  Judge York's determination to bifurcate does not mandate that two trials occur. A subsequent trial would only be necessary if the jury found that Defendant breached the contract.

With regard to prejudice to the parties, SCF argues that "contrary to the position taken by the Court in the Bifurcation Order, there will be no prejudice to Hartford if the Court bifurcates this case in accordance with Tennessee law." (D.E. 75 at PageID 2403.) Plaintiff then posits that the evidence it will present to prove that Hartford breached its contract will be the same as it will utilize to support its claims for bad faith and punitive damages. (D.E.75 at PageID 2403.)  Thus, SCF submits that Judge York based his recommendation on an incorrect conclusion that the breach of contract claim involves distinct issues from the bad faith and punitive damage issues. (D.E. 75 at PageID 2403.)  Although Plaintiff does not fully explain this argument, SCF is apparently asserting that because it will present similar evidence to establish both its contractual and extracontractual claims, Judge York's bifurcation would not protect Defendant from any potential prejudice from the jury. (*See* D.E. 75 at PageID 2403.)

The magistrate judge determined that the factual and legal issues for the breach of contract claim are different from those for bad-faith and punitive-damages. (D.E. 74 at PageID 2384.) Specifically, he found that the extracontractual claims focus on Defendant's motives, its

alleged bad faith in the investigation, and its denial of Plaintiff's claimed loss. (D.E. 74 at PageID 2384.) On the other hand, Judge York determined that the breach of contract claim turns on the terms of the underlying insurance policy contract. (D.E. 74 at PageID 2384.) Specifically, these considerations are whether the loss is covered under the policy, and whether SCF fulfilled its obligations under the insurance contract. (D.E. 74 at PageID 2384.) Judge York thus concluded that the evidentiary distinction between the contractual and extracontractual claims weighs in favor of bifurcation. (D.E. 74 at PageID 2384-85.) Moreover, he explained that if Plaintiff is allowed to introduce evidence of Defendant's purported bad faith in its handling of Plaintiff's insurance claim, the jury could hold that against Defendant when considering the issue of coverage. (D.E. 74 at PageID 2384.) And as such, bifurcation would aid in avoiding prejudice to Hartford while also streamlining litigation and furthering the convenience of the parties. (D.E. 74 at PageID 2384-85.)

Federal courts in Tennessee and in other districts within the Sixth Circuit have reached similar conclusions to that of the magistrate judge here. *See, e.g., Brantley v. Safeco Ins. Co. of Am.*, 2011 WL 6012554, at *1 (W.D. Ky. Dec. 1, 2011) (quoting *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 635 (D.C. Cir. 2010)) (stating that separate trials are appropriate "where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue"); *Farmers Bank of Lynchburg, Tennessee v. BancInsure, Inc.*, No. 2:10-CV-02222-DKV, 2011 WL 2023301, at *2 (W.D. Tenn. May 20, 2011) (finding that "[the defendant] may be prejudiced during trial if the jury is confused when listening to proof on bad faith and coverage simultaneously" and that "allegations of bad faith may prejudice [the defendant] in the minds of the jury on the issue of coverage"); *Alniswan v. Valley Forge Ins. Co.*, No. 09-2257, 2010 WL 11493933, at *3 (W.D. Tenn. Apr. 14, 2010)

(holding that bifurcating the plaintiff's breach of contract claim from its extracontractual claims promoted efficiency and saved resources because the two sets of claims required discovery that did not overlap); *Sanders v. Motorists Mut. Ins. Co.*, No. CIV. A. 3:08-37-DCR, 2008 WL 4534089, at *3 (E.D. Ky. Oct. 7, 2008) ("In fact, a determination of the bad faith issue in conjunction with the contract issue may be prejudicial to [the defendant]; presenting both issues to a jury may unfairly bleed the evidence for one into the evidence for the other."). Moreover, the Sixth Circuit has noted that where the merits of a bad faith insurance claim depend on the breach of contract claim, it is "reasonable for the court to resolve the validity question before allowing the bad faith claim to proceed*." Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). For these reasons, the Court agrees with Judge York's conclusion that bifurcation will aid in avoiding potential prejudice to the parties.

Next, SCF objects to Judge York's conclusion that his method of bifurcation will eliminate juror confusion and simplify the issues for the jury. (D.E. 75 at PageID 2404.) Plaintiff avers that "[a]ny potential juror confusion will be alleviated by evidentiary rulings and jury instructions that clarify the different tests for liability and for punitive damages, and that clear and convincing evidence is required for any award of punitive damages." (D.E. 75 at PageID 2404) (citing *Surface v. Conklin*, No. 1:15-cv-40, 2018 U.S. Dist. LEXIS 202950, at *5 (S.D. Ohio Nov. 30, 2018)).

On this issue, the Court finds an opinion from the Western District of Kentucky instructive. Facing facts similar to the ones here, the district court determined that bifurcation would completely eliminate juror confusion, as well as potential prejudice to the parties. *Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.*, 322 F.R.D. 271, 274 (W.D. Ky. 2017). In that case, the defendant insurer determined that a storage issue was not covered by the property

11

insurance it provided to the plaintiff insured, an ice cream company. *Id.* at 272. The defendant asked the court to bifurcate the plaintiff's breach of contract claims from those for bad faith and stay discovery on bad faith until the contract claims were resolved. *Id.* at 274. The court granted the defendant's motion, observing that "[b]ifurcation will allow the jury to focus on a single issue at a time [thereby avoiding] the introduction of irrelevant evidence and . . . jury confusion . . . ." *Id.* at 275 (internal quotation marks omitted).

Plaintiff's suggested method of bifurcation could cause juror uncertainty by reason of various evidentiary rulings and differing tests for liability and damages. In contrast, Judge York's alternative could eliminate such confusion as the initial jury would only determine whether Plaintiff breached the contract. If necessary, a follow up hearing would consider the extracontractual claims. *See id.* As such, this process would simplify the issues for the jury.

With regard to convenience, expedience, and economy, SCF avers that the size, magnitude, and length of different trials are such that the Court should only have to conduct one. (D.E. 75 at PageID 2402-2403.) Plaintiff also insists that both parties and the Court would be burdened by participating in two jury trials over several weeks, "based on the same set of facts." (D.E. 75 at PageID 2403.)

First, as Judge York identified, the Sixth Circuit, as well as district courts within this circuit, have concluded that bifurcation is both economical and expedient when resolution of a single issue, such as a dispute over insurance coverage, could be dispositive of the entire case. *See Warren v. Federal Ins. Co.*, 358 F. App'x 670, 676 (6th Cir. 2009); *Smith*, 403 F.3d at 407; *Wilson*, 477 F.3d at 340; *Brantley*, 2011 WL 6012554, at *2-3. The plan recommended by Judge York will be economical for the parties by allowing them to focus on the threshold issue of whether or not Defendant breached its contract. *See Brantley*, 2011 WL 6012554, at *1-2.

12

Although SCF might be inconvenienced by the prospect of conducting a second round of discovery, the Court agrees with Judge York's conclusion that its difficulty would be outweighed by the burden Hartford would undergo from taking discovery on the extracontractual claims before SCF's breach of contract claim is even decided. (D.E. 74 at PageID 2385).

Additionally, the Court agrees with Judge York's finding that his bifurcation is more likely to increase judicial economy as it could relieve the Court from having to rule on discovery issues and preside over an extended trial that involves unnecessary claims. (*See* D.E. 74 at PageID 2382.) Moreover, by bifurcating the trial into the two stages recommended by Judge York and staying discovery on the claims, the Court will ensure a more orderly discovery process and promote judicial efficiency.

In an earlier but related objection, Plaintiff states that Judge York's reliance on *Alniswan* is misplaced. (D.E. 75 at PageID 2400.) The magistrate judge cited *Alniswan* to support his conclusion that judicial economy is better served through its selected method of bifurcation "[b]ecause Hartford may not be held liable for breaching the underlying contract in bad faith until there is a determination that it breached the contract." (D.E. 74 at PageID 2382-83.) According to Plaintiff, this reasoning is flawed because "all cases involving breach of contract and bad faith require a finding that the insurer breached the insurance contract as a condition precedent to recovery on a bad faith claim." (D.E. 75 at PageID 2400.)

Plaintiff once again overlooks the discretion afforded to courts to choose to bifurcate based on the circumstances of each case as well as other precedent finding that bifurcation is appropriate when resolution of a single issue could be dispositive of the entire case. *Warren*, 358 F. App'x at 676; *Smith*, 403 F.3d at 407; *Banks by Banks*, 922 F.2d at 841; *Cravens*, 856 F.2d at 755.

Finally, SCF avers that entry of a protective order would resolve concerns regarding any inconvenience to Hartford from conducting discovery that could cause Defendant to disclose its alleged proprietary information. (D.E. 75 at PageID 2404.)

The Court disagrees. Even if a protective order alleviated some of the concerns regarding discovery of Hartford's proprietary information, it would still be burdensome for the parties to conduct discovery on bad-faith and punitive-damages claims that may ultimately prove unnecessary. Additionally, even though bifurcating a trial does not necessarily require bifurcation of discovery, simplification of that process can be one of the benefits of this procedure. *Honican v. Stonebridge Life Ins. Co.*, No. CIV.A. 05-73-DLB, 2005 WL 2614904, at *2 (E.D. Ky. Oct. 13, 2005).

## IV.    Conclusion

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's objections (D.E. 75) to Magistrate Judge York's order are **OVERRULED**, and his determinations (D.E. 74) are **AFFIRMED**. Given that Defendant's second motion to dismiss (D.E. 27) seeks only to dismiss Plaintiff's bad faith and punitive damage claims, the Court finds that this motion is **MOOT** and therefore, **DENIED WITHOUT PREJUDICE**. Defendant is given leave to refile this motion if, after resolution of Plaintiff's contractual claims, the case moves into the second phase.

IT IS SO ORDERED this 15th day of September 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE