IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SCF, LLC,

      Plaintiff,

v.

                                        No. 1:20-cv-01173-JDB-jay

HARTFORD FIRE INSURANCE
COMPANY,

      Defendant.

---

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Before the Court is a motion for partial summary judgment by Plaintiff, SCF, LLC,

("SCF") seeking a ruling that Defendant, Hartford Fire Insurance Company ("Hartford"), must

issue to Plaintiff a payment of $7,519,542.64 to bring the exterior concrete masonry unit block

walls into compliance with applicable building codes before the roofs of those buildings are

replaced.[1] (D.E. 98 at PageID 3339-40.) For the reasons herein, SCF's motion is **DENIED**.

## I.      UNDISPUTED FACTS

---

[1] The parties are admonished for their failure to cite to the record. Throughout all of the briefs submitted relating to this motion, the parties consistently fail to properly support their assertions with citations. For example, the Plaintiff, in its motion, discussed and quoted various parts of the underlying insurance contract, which is over 200 pages in length, without providing any citations. (*See e.g.* D.E. 98 at PageID 3341-42, 3345-46.) Additionally, in its response to Plaintiff's motion, the Defendant provides an in-depth argument as to why the declarations of two of Plaintiff's expert witnesses do not constitute competent summary judgment evidence. (D.E. 141 at PageID 8848-49.) However, even when discussing specific statements from one of those experts that it alleges are conclusory and unsupported, Defendant does not cite to the record to indicate where those statements are located. (D.E. 141 at PageID 8849.) There are numerous other examples of the parties' failure to properly cite to the record. The parties failure to do so is in violation of Local Rule 7.2(h) which requires the parties cite to the record. LR 7.2(h).

Moreover, when the parties do cite to some authority, they often do not reference the page number using the PageID number in the top right corner of the document.

For any documents filed in the future, the Court expects the parties to be compliant with the Local Rules. If a party files a document that does not properly cite to the record, the Court will strike that document, and the offending party will have to refile the document(s) in accordance with the Local Rules.

The following facts are undisputed unless otherwise noted. This action arises out of an insurance dispute between the named insured, SCF, and the insurer, Hartford, over coverage concerning a claim by SCF for storm damage to the insured's commercial buildings. (D.E. 1 at PageID 1-8.) SCF's facility, located at 320 Industrial Drive, Adamsville, Tennessee, (the "Property") was covered against property damage under an insurance policy issued by Hartford. (D.E. 141-1 at PageID 8864-66.) That insurance agreement, Policy No. 20UUNIA4035 (the "Policy"), was a special multi-flex business insurance policy. (D.E. 141-1 at PageID 8865.) The Policy's term was from March 15, 2019 to March 15, 2020. (D.E. 141-1 at PageID 8865.)

To be insured, the Policy required that an insured have an insurable interest, which SCF has in the Property. (D.E. 141-1 at PageID 8866.) The Policy defines a "covered cause of loss" as "direct physical loss or direct physical damage that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy." (D.E. 141 at PageID 8866-67.)

On October 26, 2019, while the Policy was in effect, a storm passed through Adamsville producing high-speed winds that caused damage to the Property. (D.E. 141-1 at PageID 8867.) Wind is a "covered loss" under the Policy. (D.E. 141-1 at PageID 8867.)

The Policy includes an Actual Cash Value Endorsement, as well as a Functional Value Endorsement. (D.E. 141-1 at PageID 8867-88; D.D. 163 at PageID 9377.) The Functional Value Endorsement provides ordinance or law coverage for the Property in some circumstances. (D.E. 141-1 at PageID 8868.)

During the adjustment of this claim, Hartford agreed to pay for the replacement of the roofs of all of the buildings with the walls. (D.E. 141-1 at PageID 8868.) Moreover, the walls of

the Property were unreinforced and had mortar degradation. (D.E. 141-1 at PageID 8869.) To date, Plaintiff has not repaired the building. (D.E. 163 at PageID 9378-79.)

## II.    PROCEDURAL HISTORY

In its original complaint filed on August 10, 2020, Plaintiff sued for breach of contract, seeking compensatory damages for $40,000,000 and an award of punitive damages of $80,000,000. (D.E. 1 at PageID 5-8.) In its amended complaint filed on October 6, 2020, SCF averred that Hartford breached the insurance contract by failing to pay the full $25,803,878.07 it demanded. (D.E. 23 at PageID 281, 283.) Plaintiff further alleged that Defendant delayed, and failed to conduct, a reasonable investigation. (D.E. 23 at PageID 284.) Plaintiff also claimed that Hartford's refusal to pay amounted to bad faith. (D.E. 23 at PageID 289-290.) The insurer contended that its investigation was hindered due to SCF's repeated delays in providing the information it had requested as well as the impact of the COVID-19 pandemic. (D.E. 36 at PageID 375-76.)

On December 18, 2020, Defendant moved to bifurcate the claims and stay Plaintiff's bad-faith and punitive-damage assertions under Federal Rule of Civil Procedure 42(b). (D.E. 35 at PageID 371.) On May 5, 2021, Magistrate Judge Jon A. York granted Defendant's motion. (D.E. 74 at PageID 2385-86.)  After Plaintiff timely appealed and objected to that order, (D.E. 75), the Court affirmed the Magistrate Judge's order and overruled Plaintiff's objections. (D.E. 164.)

On July 21, 2021, Defendant requested leave to file an amended answer and counterclaim, (D.E. 78), which the Court denied on September 16, 2021. (D.E. 165.) Defendant filed a motion for reconsideration, (D.E. 169), which the Court also denied, (D.E. 171).

## III.    LEGAL STANDARD

Rule 56 permits the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of establishing that there are no genuine issues of material facts . . . ." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017).

Only after Plaintiff comes forward with sufficient evidence to establish every element of its claim does the burden shift to Hartford to negate at least one element of Plaintiff's claim. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). In making a determination on a Rule 56 motion, the court is to "view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita*, 475 U.S. at 587)).

Moreover, "[p]artial summary judgment is appropriate to isolate and dispose of factually unsupported claims or defenses," and federal courts in this district have stated that Rule 56 "should be interpreted in a way that allows it to accomplish this purpose." *Matter of Crounse Corp.,* 956 F. Supp. 1384, 1385-86 (W.D. Tenn. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Finally, "[i]f the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id*. at 1386 (citing *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir. 1995)).

## IV.    ANALYSIS

### A.  Defendant's Objections to Plaintiff's Summary Judgement Evidence

Prior to reaching the substantive arguments raised in Plaintiff's motion, the Court will address the Defendant's objections to Plaintiff's summary judgment evidence.

1.   Declaration of Nathaniel Sparks

In reply in support of its motion, Plaintiff included a declaration of Nathaniel Sparks, the owner of SCF. (D.E. 162-2 at PageID 9375.) Hartford avers that the Court should strike the declaration. (D.E. 168 at PageID 9435-36.) Defendant states that Sparks' statement "is an attempt to introduce additional evidence after the deadline for filing dispositive motions." (D.E. 168 at PageID 9435.) However Defendant fails to support its argument by citing to any case law or rule. (D.E. 168 at PageID 9435.) Additionally, Hartford does not identify any requirement that what Plaintiff did was in error. (D.E. 168 at PageID 9435.)

It is well-settled law that issues argued by a party "in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived*." McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995)).  Moreover, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* (alteration in original). For these reasons, the Court will deem this part of Defendant's argument waived.

Next, Hartford contends that Sparks' statement that he had "been advised that the CMU block wall buildings must be brought into code compliance in conjunction with replacing the roofs of those buildings" demonstrates that this evidence is not a matter within his personal knowledge. (D.E. 168 at PageID 9435.) As such, Defendant submits the Court should strike it. (D.E. 168 at PageID 9435-36.)

A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge." *Davidson v. Fed. Bureau of Prisons*, No. 17-5429, 2017 WL 8897005, at *3 (6th Cir. Nov. 29, 2017) (alteration in original) (quoting Fed. R. Civ. P. 56(c)(4)). Based on Sparks' statement, it is clear that information was not personally known by the affiant. (D.E. 168 at PageID 9435.) Thus, that part of Sparks' declaration is struck from the record.

Hartford further objects to Sparks' declaration as conclusory. (D.E. 168 at PageID 9435.) Defendant's objection is based on a lack of factual support for the declarant's assertion that SCF cannot pay for the repairs without additional insurance proceeds from Hartford. (D.E. 168 at PageID 9435-36.)

As Defendant avers, a conclusory and unsupported declaration is not competent summary judgment evidence. *Pierce v. Ocwen Loan Servicing, LLC*, 2020 U.S. Dist. LEXIS 64013 at *9-10 (W.D. Tenn. Apr. 13, 2020). However, when a declaration is from someone within a business, that person's "personal knowledge and competence to testify [can be] reasonably inferred from his position and the nature of his participation in such matters." *Dixit v. Kettering Med. Ctr.*, 954 F.2d 724 (6th Cir. 1992) (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam)).

In *Dixit*, an employment discrimination case, the Sixth Circuit found that the district court did not abuse its discretion in relying on the affidavit of Robert E. Dell as evidence of the employer's reason for terminating plaintiff and for its subsequent decision not to rehire him. *Id.* The appellate court explained that because Dell was hired by defendant as an assistant vice president in charge of personnel, his knowledge was inferred from the position he held and the nature of his involvement in such matters. *Id.*

6

Given that Sparks is the owner and designated corporate representative of SCF, it can be assumed that he has personal knowledge of the topic. (D.E. 127-6 at PageID 6837); (D.E. 162-2 at PageID 9375.) As such, the Court will consider this part of Sparks' declaration.

2.   Declaration of Steve Prosser and Justin Willits

Hartford also contends that declarations of experts Steve Prosser and Justin Willits are not competent summary judgment evidence. (D.E. 141 at PageID 8848.) According to Defendant, Prosser's statement contains conclusory and unsupported opinions. (D.E. 141 at PageID 8849.) Defendant specifies that the following opinions made by Prosser fit in this category:  (1) the walls "must be made code compliant before replacement of the roofs in those areas;" (2) repairing the walls "is considered a major repair under the applicable building codes;" (3) Section 606.1 and 606.2.3 of the International Existing Building Code are triggered by the replacement of the roofs; and (4) the walls are presently a dangerous condition. (D.E. 141 at PageID 8850.) Hartford also submits that because Willits' declaration is based on Prosser's opinions, the affiant's opinions likewise are not proper summary judgment evidence. (D.E. 141 at PageID 8850.)

In support of its argument, Defendant claims that Prosser's first three opinions simply arise from the fourth in that he opines in a conclusory fashion that the walls must be made code compliant because they are in a hazardous condition. (D.E. 141 at PageID 8850.) According to the insurer, Prosser provides no underlying facts that the walls are unsafe as that term is defined in the International Existing Building Code ("IEBC"). (D.E. 141 at PageID 8850.)

In response, Plaintiff requests the Court to review Prosser's affidavit. (D.E. 162 at PageID 9365.) By doing so, SCF maintains that the Court will determine that Prosser's declaration is supported, that the IEBC applies and that the CMU block walls are in a perilous

state which needs repairs to ensure compliance with the IEBC. (D.E. 162 at PageID 9365.) SCF echoes these conclusions in stating that Willits' reliance on Prosser's declaration is appropriately supported. (D.E. 162 at PageID 9365.)

An expert's declaration that is "full of assertion but empty of facts and reasons, won't get a case past a motion for summary judgment, for the judge must 'look behind [the expert's] ultimate conclusion . . . and analyze the adequacy of its foundation.'" *Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 551 (6th Cir. 2011) (quoting *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989)). Moreover, that opinion "must do more than just set forth facts, but must also 'outline a line of reasoning from a logical foundation.' Therefore, if an expert 'supplies nothing but a bottom line, the expert supplies nothing of value to the judicial process.'" *McKissick v. Electrolux Home Prods.*, 2011 U.S. Dist. LEXIS 71532 (M.D. Tenn. July 1, 2011) (citations omitted).

Here, Prosser's declaration provides more than just conclusions. (*See* D.E. 105-1.) Rather, he presents a basis for his opinion and his reasoning. (*See* D.E. 105-1.) For example, Prosser does not simply state that the walls constitute a dangerous condition. (*See* D.E. 105-1.) Instead, he reasons that because they are unreinforced and have suffered degradation, they constitute a high-risk situation. (D.E. 105-1 at PageID 4680-81.) Moreover, Prosser provides an analysis of the state of the walls and why the applicable building codes mandate that they be repaired prior to the replacement of the roofs. (D.E. 105-1 at PageID 4680-82.)

Accordingly, Prosser's declaration will not be struck from the record. Further, because Willits' statement relies on Prosser's findings, (D.E. 105-7 at PageID 5218), the Court also finds that his affidavit may remain.

### B.  Factual Disputes

There are several existing factual disputes that preclude summary judgment.[2] The Court will address each of these.

1. Material Misrepresentations

Defendant contends there is a disagreement as to whether Plaintiff is entitled to coverage because it made misleading statements about the condition of the building when renewing the Policy for the period at issue. (D.E. 141 at PageID 8852-53.) Hartford further asserts that these misrepresentations will create, at a minimum, a question of fact as to whether Plaintiff is entitled to any coverage under the Policy. (D.E. 141 at PageID 8853.)

The Court has denied Defendant's motion for leave to file an amended answer and counterclaim. (D.E. 165.) However, an issue of fact still exists as to whether SCF made these misrepresentations, and if so, whether it is entitled to any coverage under the Policy.

The issue of whether a party made a misstatement in its insurance renewal application is a question to be determined by the finder of fact. *Jesmer v. Erie Ins. Co.*, No. 21-5186, 2021 WL 4473396, at *3–4 (6th Cir. Sept. 30, 2021) (quoting *Howell v. Colonial Penn Ins. Co.*  842 F.2d at 822–23.)) Therefore, the Court finds the jury must decide this issue.

2. The Actual Cash Value Endorsement, the Functional Value Endorsement and the Prevention Doctrine

The parties disagree as to which provisions of the Policy apply to the walls. The Policy provides coverage for "Covered Causes of Loss," which it defines as "direct physical loss or direct physical damage that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy." (D.E. 141-2 at PageID 8955.)

---

[2] Hartford contends that there is a factual argument as to whether SCF has repaired or replaced the CMU block walls and, if so, the amount Plaintiff actually spent. (D.E. 141 at PageID 8851.) However, in Plaintiff's response to Defendant's statement of material facts, SCF admitted that it is "[u]ndisputed that repairs have not been accomplished." (D.E. 163 at PageID 9378-79.) Therefore, this fact is not in controversy.

The Policy states that if there is a covered loss, Plaintiff's property will be valued based on the Actual Cash Value Endorsement of the Policy. (D.E. 141-2 at PageID 8988-90.) However, the Policy also includes a Functional Value Endorsement. (D.E. 141-2 at PageID 8989-90.)

Under the Policy's terms, Actual Cash Value does not include ordinance or law coverage, (D.E. 141-2 at PageID 8944-45), but the Functional Value Endorsement provides such coverage in some circumstances. (D.E. 141-2 at PageID 8989.) The Functional Value Endorsement provides, in relevant part:

> Functional Value - Building
> b. If you contract for repair or replacement of the loss or damage to restore the building within 180 days of the damage, unless we and you otherwise agree, we will pay the least of:
> (1) The Functional Value Limit of Insurance applicable to the damaged building; or
> . . .
> (3) In the event of partial loss:
> (a) The cost to repair or replace the damaged portion with less costly material, if available, in the architectural style that existed before the loss or damage occurred; and (b) The amount you actually spend to demolish and clear the site of undamaged parts of the building as described in the Ordinance or Law Additional Coverage; or
> (4) The amount you actually spend:
> (a) That is necessary to repair or replace the lost or damaged building with less costly material if available; and
> (b) To demolish and clear the site of undamaged parts of the building as described in the Ordinance or Law Additional Coverage.

(D.E. 141-2 at PageID 8989.)

With regard to increased costs of construction due to required compliance with ordinances or laws, the Policy contains three forms of ordinance or law coverage, only the third of which Plaintiff contends is applicable. (D.E. 98-1 at PageID 3342.) The third form states:

> With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
> (1) Repair or reconstruct damaged portions of that building; and/or
> (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the
minimum standards of the ordinance or law.
However:
(1) This coverage applies only if the repaired, restored or remodeled property
is intended for similar occupancy as the current property, unless such
occupancy is not permitted by zoning or land use ordinance or law.
(2) We will not pay for the increased cost of construction if the building is not
repaired, reconstructed or remodeled.

(D.E. 141-2 at PageID 8915.)

SCF states that "Hartford erroneously relies on the Actual Cash Value [] Endorsement

within its Policy for its contention that SCF is not entitled to ordinance or law coverage here."

(D.E. 162 at PageID 9367.) According to Plaintiff, the Actual Cash Value Endorsement only

applies to the roofs of SCF's Property, not the walls. (D.E. 162 at PageID 9367.) SCF supports

its argument by citing to the depositions of two of Defendant's employees in which both stated

that the Actual Cash Value Endorsement only applied to the roofs. (D.E. 162 at PageID 9367)

(quoting D.E. 98-3 at PageID 3424 and D.E. 162-1 at PageID 9372-73.)

Plaintiff also contends that the Functional Value Endorsement overrides the Actual Cash

Value and Real Cash Value Endorsements of the Policy. (D.E. 162 at PageID 9367.) Once again,

Plaintiff supports its position by relying on the deposition of an employee of Hartford (D.E. 162

at PageID 9367) (citing D.E. 98-3.)

In its surreply, Hartford avers that neither of Plaintiff's arguments has merit. (D.E. 168 at

PageID 9439-40.) Defendant submits that Plaintiff's position that the Actual Cash Value

Endorsement only applies to the roofs is illogical. (D.E. 168 at PageID 9439.) According to the

insurer, "Plaintiff's entire basis for its motion is that because Hartford agreed that the flat roof

was covered under the Policy, the upgrades to the walls must be covered because they, according

only to Plaintiff's expert, are a necessary part of the roof repair." (D.E. 168 at PageID 9439.)

As to SCF's position that the Functional Value Endorsement prevails over the other endorsements, Defendant states, "the Functional Value Endorsement does not erase the requirement that Plaintiff repair or replace the property before it is entitled to the cost of code upgrades." (D.E. 168 at PageID 9440.) Defendant also contends that "[t]he Functional Value Endorsement expressly states, by its plain language, that it adds an exception to the Loss Payment and Valuation Conditions, not that it supersedes them." (D.E. 168 at PageID 9440) (citing D.E. 141-2 at 113.)

A federal court in diversity litigation applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee law provides that "[i]n general, the interpretation of an insurance policy is a question of law and not fact" and is controlled by the same rules as those governing interpretation of other contracts. *Alvord Invs., LLC v. The Hartford Fin. Servs. Grp., Inc.*, 660 F. Supp. 2d 850, 854–55 (W.D. Tenn. 2009) (quoting *Charles Hampton's A–1 Signs, Inc. v. Am. States Ins. Co.,* 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006)). Thus, analysis of an insurance policy requires looking to "the four corners of the instrument to ascertain its meaning as an expression of the parties' intent" and giving the words of the policy "their usual, natural, and ordinary meaning." *Id*. at 855 (quoting *VanBebber v. Roach,* 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007)). Additionally, an insurance policy should be construed as a whole in a reasonable and logical manner and the language in dispute should be examined in the context of the entire agreement. *Powell v. Clark*, 487 S.W.3d 528, 534 (Tenn. Ct. App. 2015).

In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn.

2006) (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889–90

(Tenn.2002)). The Court's initial task in construing the contract at issue is to ascertain whether

the language is ambiguous. *Id*. If the language is clear and unambiguous, the literal meaning

controls the outcome of the dispute. *Id.* More specifically, if the language of a contract is

unambiguous, the Court must interpret it as written. *Thomas & Betts Corp. v. Hosea Project

Movers, LLC*, No. 02-2953 MA/M, 2007 WL 6892328, at *17 (W.D. Tenn. Nov. 2, 2007)

(quoting *Honeycutt v. Honeycutt,* 152 S.W.3d 556, 561–62 (Tenn. Ct. App. 2003)).

Moreover, the Court may only look to extrinsic parol evidence, like statements from the

contracting parties or their employees, if the contract language is ambiguous. *Id.* at *17-18.

Language in a contract is deemed ambiguous "only when it is of uncertain meaning and may

fairly be understood in more ways than one." *Id.* at 17 (quoting *Watson,* 195 S.W.3d at 611).

Upon review of the Policy, the Court finds no language stating that the Actual

Cash Value Endorsement only applies to the roof. (*See* D.E. 141-2.) In fact, the Court

cannot determine in the Policy where the roof and walls are differentiated from one

another. (*See* D.E. 141-2.) Therefore, the Court concludes that the Actual Cash Value

Endorsement applies to both the roofs and the walls of the Property.

Next, based on a plain reading of the Policy, the Court finds that the Functional

Value Endorsement is to be read in addition to the Loss Payment and Valuation

Conditions. (D.E. 141-2 at PageID 8989.) The Functional Value Endorsement states that

"it is added to the Loss Payment and Valuation Conditions." (D.E. 141-2 at PageID

8989.) Not, as Plaintiff argues, that it trumps or supersedes the other provisions within

the Policy.[3] (D.E. 162 at PageID 9367.) Moreover, because this part of the Policy is

---

[3] Once again, Plaintiff does not cite to any language in the Policy to support this assertion.

unambiguous, the Court cannot consider the depositions cited by Plaintiff in support of its assertion. *See Thomas & Betts Corp.*, 2007 WL 6892328, at *17-18.

Defendant also avers that pursuant to the insurance policy, ordinance or law coverage has not been triggered because Plaintiff has yet to make the repairs. (D.E. 141 at PageID 8853.) In response, SCF contends that the prevention doctrine excuses the requirement that it must make repairs before Hartford has to reimburse it. (D.E. 162 at PageID 9367-68.) Defendant insists that determining whether the "prevention doctrine" applies requires resolving factual issues and, thus, precludes summary judgment. (D.E. 168 at PageID 9441.)

Under the language of the Policy, ordinance or law coverage is only applicable if Plaintiff contracts to repair or replace the damaged property. (D.E. 141-2 at PageID 8989-90.) Moreover, the amount of ordinance or law coverage owed cannot be calculated until those repairs are made. (D.E. 141-2 at PageID 8989-90.) This is because the amount of ordinance or law coverage is the lesser of the Functional Value Limit of Insurance, the cost to repair or replace the damaged portion of the building, or the amount SCF actually spends. (D.E. 141-2 at PageID 8989-90.) However, as Plaintiff insists, the prevention doctrine may excuse its failure to make those repairs. (D.E. 162 at PageID 9367-68.)

A repair or replacement clause imposes a condition on the insured before it can receive payment from the insurer: the insured must first repair or replace the damage and do so within a reasonable time. *VJ, LLC v. State Auto Prop. & Cas. Ins. Co.*, No. 14-2919, 2016 U.S. Dist. LEXIS 187739, at *25 (W.D. Tenn. Aug. 3, 2016). However, under the prevention doctrine, "[w]hen the insurer, in breach of the insurance contract, denies liability for the insured's loss, most courts conclude that such denial may excuse the insured's duty [to repair or replace the

14

damaged property]." *Id*. (quoting *D&S Realty, Inc. v. Markel Ins. Co.*, 284 Neb. 1, 816 N.W.2d 1, 13 and n.31 (Neb. 2012) (collecting cases)). "Whether the insurer's decision to deny coverage was made in bad faith or because of a "good faith misunderstanding of the rights and liabilities of the parties" is irrelevant. *Id*.

The prevention doctrine arises from the "general principle of contract law that if one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused.'" *Id*. (citing Williston on Contracts § 39:3 (4th ed.)). The purpose of this doctrine "is to prevent the party causing the failure of performance from taking advantage of that failure." *Id*.

The Tennessee Supreme Court has not applied the prevention doctrine to insurance contracts. *Id*. at *24. When the state supreme court has not yet addressed an issue presented, "[this Court] must predict how the court would rule by looking to all the available data." *AllState Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citing *Prestige Cas. Co. v. Mich. Mut. Ins. Co.,* 99 F.3d 1340, 1348 (6th Cir.1996)). "Available data" includes decisions of the Tennessee Supreme Court in analogous cases and relevant dicta, decisions of the Tennessee Court of Appeals, positions in restatements of law and treatises, law review articles, and decisions from other jurisdictions or the 'majority' rule. *VJ, LLC*, 2016 U.S. Dist. LEXIS 187739, at *24-25 (quoting *ACME Roll Forming Co. v. Home Ins. Co.*, 31 F. App'x 866, 870 n.2 (6th Cir. 2002)).

In *VJ, LLC v. State Auto*, Judge Samuel H. Mays, Jr. of this District encountered the same issue. 2016 U.S. Dist. LEXIS 187739, at *25. In that case, which involved allegations an insurance company breached its contract, the court determined that a Tennessee court would hold that a repair or replacement clause could be excused "if the insurer denies coverage as long as

the insured shows that the denial materially affected its decision not to repair or replace the insured property." *Id*. at 28-29 Adopting reasoning from the Supreme Court of Nebraska, Judge Mays explained that it would be "'wasteful [] and useless' to require the insured to comply with the repair/replace condition when, by doing so, the insured would not obtain recognition of the coverage." *Id.*, at *25-26 (quoting *D&S Realty, Inc.*, 816 N.W.2d at 18)).

Other courts have also recognized that it is unfair for an insured to incur the cost of repair or replacement without the guarantee of a successful breach of contract action. *Id.* at *26 (citing *Conrad Brothers v. John Deere Ins. Co.*, 640 N.W.2d 231, 241 (Iowa 2001) (collecting cases) and *Zaitchick v. American Motorists Ins. Co.*, 554 F. Supp. 209, 217 (S.D.N.Y. 1982) (based on case law and "equitable considerations" it would be impossible for the insured to repair or replace the property when the insurer refuses payment under the contract)). Many courts have also found it difficult for most to obtain the financing necessary to repair or replace once coverage has been denied. *Id.* at *26 (citing *Conrad*, 640 N.W.2d at 241 (collecting cases) and *Zaitchick*, 554 F. Supp. at 217)*. Some courts have found that when the insurer denies coverage, the insured is excused from repairing or replacing property as a matter of law. *Id*. at *26-27 (citing *D&S Realty,* 816 N.W.2d at 21; *Johnson v. Coss*, 667 N.W.2d 701, 706-07 (S.D. 2003); 13 Williston on Contracts § 39:3 (4th ed.)). However, other courts—including Judge Mays in *VJ, LLC*—and treatises agree that whether interference by one party to a contract amounts to prevention so as to excuse performance by the other party is a question for the jury. *Id*. at *28-29 (citing *D&S Realty, Inc.*, 816 N.W.2d at 21; *Johnson v. Coss*, 667 N.W.2d at 706-07; 13 Williston on Contracts § 39:3 (4th ed.)). In the latter circumstance, the insured must show that the denial of coverage was material to its decision not to make repairs or replacements. *Id*. at *27-29.

16

Tennessee courts adhere to the general contract principle that "[e]ach party has the right to proceed free of hindrance by the other party." *Id.* at *27 (quoting *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995)). "[I]f such other party interfered, hindered, or prevented the performance to such an extent as to render the performance difficult and diminish the benefits to be received, the first party could treat the contract as broken and was not bound to proceed under the added burdens." *Id.* (quoting *The Wil-Helm Agency v. Lynn*, 618 S.W.2d 748 (Tenn. Ct. App. 1981)) (internal quotation marks omitted). "[T]he conduct of one party to a contract which prevents the other from performing his part is an excuse for nonperformance." *Id.* (quoting *Maness v. Collins*, No. W2008-00941-COA-R3-CV, 2010 WL 4629614, at *9 (Tenn. Ct. App. Nov. 17, 2010)). These equitable principles arise from the "implied duty of good faith and fair dealing" that exists in every contract. *Id.* What that duty requires depends on the individual contract. *Id.*

The Tennessee Court of Appeals applied these principles *in Moody Realty Co., Inc. v. Huestis et. al.*, 237 S.W.3d 666 (Tenn. Ct. App. 2007). After the plaintiff real estate agency had located a farm the defendants were interested in purchasing, the buyers said they no longer wished to use the plaintiff's services and negotiated directly with the seller. *Id.* at 668. The court found that a valid contract had existed between the parties before the defendants indicated they were no longer desirous of using the plaintiff's services. *Id.* at 678. The contract required the defendants to pay the agency commission if they entered into a contract to purchase the farm through the assistance of the agency. *Id.* The defendants did not pay. *Id.* The court held that, by refusing to use the realtors to purchase the farm, the defendants had prevented the agency from fulfilling the condition precedent to receiving a commission: assisting the defendants in entering

17

into a contract with the seller. *Id*. Because the purchasers had prevented the agency's performance, performance was excused and the condition was deemed fulfilled. *Id*. at 678-79.

As Judge Mays concluded in *VJ, LLC*, there was no reason to believe that the Tennessee Supreme Court would disagree with these contract principles. *VJ, LLC*, 2016 U.S. Dist. LEXIS 187739, at *28-29. Likewise, Judge Mays found that nothing had been presented in his case to suggest that Tennessee's highest court would rule contrary to the decisions in other states holding that an insured could be excused from fulfilling a repair or replacement condition if the insurer denied coverage and the insured showed that the denial materially affected its decision not to repair or replace the insured property. *Id*. (concluding the same when faced with similar circumstances).

Although the Court agrees that the Tennessee Supreme Court would recognize the doctrine of prevention, there are two genuine disputes of material fact about whether the doctrine even applies here. First, Defendant asserts that it did not deny SCF's claim as it paid Plaintiff more than $4 million for replacement of the flat roofs and for repair of limited portions of the walls. (D.E. 168 at PageID 9440.) In their motion for summary judgment, SCF argues that this inadequate payment amounted to a denial of the needed repairs. (D.E. 98-1 at PageID 3342.)

Second, even if it was determined that Hartford's payment constituted a denial of the claim, a question still remains as to whether the denial materially affected SCF's decision not to repair the Property. Sparks states in his affidavit that without the insurance proceeds, SCF was unable to pay for the repairs. (D.E. 162-2 at PageID 9375.) Defendant has not presented any evidence to the contrary. But Hartford does contend that Sparks offers no independent support for his assertion. (D.E. 168 at PageID 9441.) Even if the Court were to accept Sparks' statement,

it does not provide a self-sustaining basis that the denial materially affected SCF's decision not to repair or replace the walls. (D.E. 168 at PageID 9441.)

Therefore, viewing the evidence in the light most favorable to Hartford, a reasonable factfinder could conclude that Defendant did not deny the claim and/or that the denial of coverage did not materially affect SCF's decision not to repair. Therefore, the Court finds these issues are decisions of fact for the jury to decide.

3. Dangerous Condition

Whether the Property is considered in a "dangerous condition" is important to this lawsuit, and the parties dispute this issue. There are several building codes that are applicable to this question.

Section 606.1 of the 2012 International Building Code ("IBC") states:

Structural repairs shall follow this section and Section 601.2. Regardless of the extent of structural or nonstructural damage, dangerous conditions shall be eliminated. Regardless of the scope of repair, new structural members and connections used for repair or rehabilitation shall comply with the detailing provisions of the [IBC] for new buildings of similar structure, purpose, and location.

(D.E. 98-4 at PageID 3595.)

Moreover, Section 202 of the IEBC explains what is considered a "dangerous condition." It states:

Any building, structure or portion thereof that meets any of the conditions described below shall be deemed dangerous:

1. The building or structure has collapsed, has partially collapsed, has moved off its foundation, or lacks the necessary support of the ground.

2. There exists a significant risk of collapse, detachment or dislodgment of any portion, member, appurtenance or ornamentation of the building or structure under service loads.

(D.E. 141 at PageID 8849.)

19

However, Section 602.1 of the IEBC states, "materials already in use in a building in compliance with requirements or approvals in effect at the time of their erection or installation shall be permitted to remain in use unless determined by the code official to render the building or structure unsafe or dangerous."[4] (D.E. 141 at PageID 8858.) Although the parties do not directly address this issue, it appears that they agree that the walls fall under this section of the IEBC. (*See* D.E. 141 at PageID 8858-59; D.E. 162 at PageID 9365-66.)

Ricky Watkins, a code official and certified building inspector licensed by the state of Tennessee, received a request from Rick Chandler and Nathaniel Sparks to perform an initial inspection of the Property due to the damage from recent storms. (D.E. 141 at PageID 8858); (D.E. 141-4 at PageID 9126.) His inspection was performed on December 12, 2019. (D.E. 141-4 at PageID 9126.) Watkins' report stated the following about the walls:

> Second, I noticed numerous large cracks in the [walls] supporting much of the roof in the warehouse and storage areas. My understanding was that numerous tests had been performed on the[] walls to verify their structural integrity. As I am not an engineer, I will rely upon the reports of the certified, licensed engineers and design professionals for the reliability of the[] walls.

> (D.E. 141-4 at PageID 9126.)

In his letter, Watkins did not indicate which of the certified engineers' opinion he would rely on for this determination. (*See* D.E. 141-4 at PageID 9126.) His apparent failure to make such a decision is important as he appears to be the only code official to have visited the Property. Thus, a code official has not concluded whether the building is dangerous.

---

[4] A code official is "the officer or other designated authority charged with administration and enforcement of this code." (D.E. 141 at PageID 8858.)

The parties have set forth the opinions of competing expert witnesses regarding whether the walls constitute a dangerous condition. (D.E. 75-1); (D.E. 75-2); (D.E. 98 at PageID 3347); (D.E. 105-1 at PageID 4680-82); (D.E. 141 at PageID 8847, 8859-62)[5] This presents a "battle of the experts" in which summary judgment is inappropriate. *Speakman v. Liberty Ins. Corp.*, No. 4:16-CV-41, 2017 WL 3671364, at *5 (E.D. Tenn. July 5, 2017). The Sixth Circuit has made clear that where there are competing expert opinions, "it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (quoting *Cadmus v. Aetna Casualty and Surety Co.*, 1996 WL 652769, at *2 (6th Cir.

---

[5] In its statement of undisputed facts, SCF included part of the testimony from one of Defendant's experts, David Jones, on this issue. (D.E. 98-2 at PageID 3361.) However, in doing so, Plaintiff truncated the expert's testimony. (D.E. 98-2 at PageID 3361.) It appears that Plaintiff did this as an attempt to discredit Defendant's argument and make it seem as though Jones' statement actually supported Plaintiff's position, which is incorrect. (D.E. 98-2 at PageID 3361.) Plaintiff's submission quoted the expert's deposition as follows:

37. David Jones testified:
Q. And whatever component is being worked on, if that component is not up to code, it has to be brought up to code; true?
. . .
A. If it is being replaced or repaired?
Q. Yes.
A.· It has to be, yes[.]

(D.E. 98-2 at PageID 3361.)

The expert's full response was:

Q. And whatever component is being worked on, if that component is not up to code, it has to be brought up to code; true?
. . .
A. If it is being replaced or repaired?
Q. Yes.
A.· It has to be, yes - -
Q. Okay.
A. -- if it is not being touched, it doesn't necessarily have to be brought up to code.

(D.E. 98-7 at PageID 3608.)

Plaintiff's counsel is cautioned that not providing the full context of testimony may be considered by the Court as misrepresenting the witness's statement. Such omissions might be considered sanctionable.

Nov.7, 1996) (alteration in original)). Therefore, the Court will not invade the province of the jury which would be charged with making those determinations.

## V.      CONCLUSION

Based on the foregoing, Plaintiff's motion for partial summary judgment (D.E. 98) is **DENIED**.

IT IS SO ORDERED this 20th day of January 2022.

s/ J. DANIEL BREEN

UNITED STATES DISTRICT JUDGE